**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

JOSE ANGEL COLIN HERNANDEZ,
Petitioner,
v.
JAMES JANECKA, et al.,
Respondents.

No. 5:26-cv-01385-AYP

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. SUMMARY

Petitioner Jose Angel Colin Hernandez ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Dkt. No.1) (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California.

Having reviewed the record, the Court concludes that Petitioner's April 6, 2026, Bond Hearing was sufficiently individualized and comports with the conditions of the District Court's Order Granting TRO, and the protections of Fifth Amendment Due Process. Accordingly, the Court ORDERS that the Petition be denied.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner represents that he is a native and citizen of Mexico. (Dkt. No.

1 ¶16.) Petitioner contends that he entered the United States without inspection on or about March 12, 2006, and has been residing in the United States since such time. (Dkt. No. 1 ¶17.) Petitioner represents that throughout the duration of his residence in the United States he has incurred no criminal convictions, has maintained gainful employment, and has worked to provide for his partner, and his two children who are United States citizens. (Dkt. No. 1 ¶19,23.) Petitioner also represents that he is his family's primary financial provider and that both of his children are fully dependent on him for their day-to-day needs. (Dkt. No. 1 ¶23.) Petitioner contends that he has established substantial ties to the community and admiration from his neighbors who note Petitioner's devotion to his family, his job, and his faith. (Dkt. No. 1 ¶20.)

Petitioner asserts that he was working on the morning of January 19, 2026, on-site at a medical clinic, when several ICE vehicles pulled into the clinic's parking lot. (Dkt. No. 1 ¶24.) Petitioner represents that the ICE officers proceeded to run toward him, grab him, and place him in handcuffs. *Id.* Petitioner contends that same day he was served with a Notice to Appear ("NTA") and placed in formal removal proceedings under INA § 240, 8 U.S.C. § 1229a. (Dkt. No. 1 ¶27.) Petitioner asserts that he was subsequently transported to the Adelanto Detention Facility, where he was held under the mandatory detention provisions of INA § 235, 8 U.S.C. § 1225 as of the filing of the Petition. (Dkt. No. 1 ¶28.)

On March 30, 2026, the District Judge granted Petitioner's Motion for Temporary Restraining Order (Dkt. No. 7) ("Order Granting TRO"). The District Judge's Order Granting TRO enjoined Respondents "from continuing to detain Petitioner unless he is provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Order" and referred further proceedings on the merits of the Petition to the Magistrate Judge for decision. (Dkt. No. 7 at 2-3.)

On April 9, 2026, the parties submitted a Joint Status Report (Dkt. No. 9) ("Joint Status Report") in compliance with the District Court's Order Granting TRO. In the Joint Status Report, Respondents inform the Court that they held a bond hearing on April 6, 2026, in compliance with the District Court's Order Granting TRO. (Dkt. No. 9 at 2.) Respondents further informed the Court that Petitioner's request for a change to custody status was denied because the immigration judge ("IJ") determined that Petitioner was a flight risk. *Id.* Petitioner asserts that Respondents violated the Court's Order by failing to provide an individualized bond hearing comporting with the requirements of 8 U.S.C. § 1226(a) and constitutional due process. *Id.*

In his Order denying Petitioner's bond, the IJ did not find that Petitioner is a danger to the community. However, he did find Petitioner to be a flight risk based on the following reasoning:

> [I]n assessing the respondent's flight risk, the Court is guided by the factors set out in Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006). These factors are: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and

(9) the alien's manner of entry to the United States. In exercising discretion, the Court has "broad discretion in deciding the factors that he or she may consider in custody redeterminations. The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." Id.

Here, the record establishes that the respondent has three exits from the United States, and each time the respondent exited the country, he re-entered illegally. Aside from demonstrating a disregard for the immigration laws of the United States, the respondent's immigration history means that despite his 20 year-old child who is a United States citizen, who would be eligible to petition the respondent within a year, adjustment of status is not viable, as the respondent is permanently barred under section 212(a)(9)(C) of the Act based on his illegal reentries into the United States. The respondent also has another daughter, who has a possible medical condition, which has yet to be confirmed. The respondent also has a fixed address where he would reside if he was released.

The respondent has applied for cancellation of removal for certain non-permanent residents. However such application is speculative. This is so for two reasons. First, whether the respondent's daughter's medical condition rises to the level of exceptional and extremely

unusual hardship is a triable issue, where the evidence establishes that she would remain in the United States to maintain care. See Matter of Buri Mora, 29 I&N Dec. 186. 187 (BIA 2025). Second, the respondent's employment history suggests that the respondent has been formally paid, and the respondent has filed taxes (but has not provided the W-2s issued in support of such payment). However, the respondent does not have work authorization. Thus, aside from working illegally in the United States, which is itself a violation of the laws of the United States, the respondent has likely provided a false social security number to his employer. This is because, as required by the IRS, W-2s must specify the respondent's social security number. See IRS.gov, Hiring Employees, available at https://www.irs.gov/businesses/small-businesses-self-employed/hiring-employees (last accessed April 7, 2026) (stating, "Do not accept an ITIN in place of an SSN for employee identification or for work.")

The respondent's use of a false social security number is both a negative discretionary factor and also a deceptive act which reflects negatively on the respondent's good moral character. Matter of Gonzalez-Jimenez, 29 I&N Dec. 129, 132 (BIA 2025) ("Presenting a false Social Security number and false information on tax returns are examples of deceptive conduct that reflects adversely on an alien's character.") The

respondent's deception thus extends throughout his recent employment history, which makes the respondent's application for cancellation of removal substantially less likely to be granted, thus increasing the risk of flight. See Matter of Dobrotvorskii, 29 I&N Dec. 211, 215 (BIA 2025) (citing Matter of Andrade, 19 I&N Dec. 488, 490 (BIA 1987)).

Similarly, the respondent's other application for relief, asylum and related relief is also speculative. Id. at 214-15. This is particularly true here, where the respondent's application for asylum is untimely--i.e. not filed within one year of his last arrival to the United States, here 2006. The respondent, through counsel argued that an exception to the one-year exists, where the respondent was not aware of the obligation to file within one year. Yet, it is well established that ignorance of the law is no excuse. See Antonio-Martinez v. INS, 317 F.3d 1089, 1093 (9th Cir. 2003) ("As general rule, ignorance of the law is no excuse.").

And, counsel articulated a potential particular social group as a nexus to any harm he would suffer, a necessary element to establish eligibility for asylum and withholding of removal, as "Fathers of a United States Citizen." Yet, for several reasons, such a group is neither particular nor social visible. Initially, the respondent's group impermissibly broad,

> "encompassing a diverse cross section of society of widely varying ages, socioeconomic statuses, marital statuses, family backgrounds, and lifestyles." Matter of K-E-S-G-, 29 I&N Dec. 145, 151 (BIA 2025). Indeed, the proposed definition does not even limit membership in that group to citizens of the respondent's own country. It is also unclear how Mexican society views that proposed group as socially visible and distinct, which is similarly fatal to the respondent's application. Id. at 155.
>
> The Court weighs the likelihood of success on relief applications more heavily than the respondent's other factors here, because the ultimate determination of whether the respondent will be able to remain legally in the United States, is one of the very purposes of removal proceedings.
>
> As such, the Court finds the respondent a flight risk such that no bond is appropriate. To the extent there is any doubt in the Court's mind, that doubt weighs against release because the respondent bears the burden of proving he should be released on bond. See Pereida v. Wilkinson, 141 S.Ct. 754, 765 (2021) ("the party who bears the burden of proving these facts bears the risks associated with failing to do so").
>
> (Dkt. No 9-1.)

On July 31, 2026, Petitioner submitted a Motion to Amend ("Motion to

Amend") seeking the Court's leave to file amended pleadings. (Dkt. No. 12.) On August 12, 2026, Petitioner filed a Reply to Notice of Motion and Motion to Amend (Dkt. No. 13) ("Reply to Motion to Amend"). On August 13, 2026, the Court issued an Order denying the Motion to Amend wherein the Court informed the parties that it intends to consider the arguments presented in the Motion to Amend and Petitioner's Reply to Motion to Amend directly in its ruling on the merits of the Petition and ordered Respondents to provide a response. (Dkt. No. 14.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 and Motion for Temporary Restraining Order ("Motion for TRO") on March 23, 2026. (Dkt. No. 1 and 2.) Respondents filed their Response (the "Response to Petitioner's Motion for TRO") on March 27, 2026. (Dkt. No. 6.) The District Court issued a Temporary Restraining Order ("TRO") on March 30, 2026. (Dkt. No. 8.) Petitioner submitted a Motion to Amend on July 31, 2026 (Dkt. No. 12) and a Reply to his Motion to Amend on August 12, 2026 (Dkt. No. 13). Respondents submitted their Response to Petitioner's Motion to Amend on August 21, 2026. (Dkt. No. 15.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III. DISCUSSION

In Petitioner's Reply to Motion to Amend, Petitioner asserts that "under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner's now-six-month detention is constitutionally deficient because (1) Petitioner's liberty interest in freedom from unwarranted, prolonged detention is not dependent on a grant of prior release; (2) the risk of erroneous deprivation has continuously manifested through the Department and EOIR's failure to provide constitutionally sufficient pre-and post-deprivation procedures, and (3) the Department has a low interest in subjecting Petitioner to prolonged

detention when he poses no safety or flight risk." (Dkt. No. 13 at 7.) Petitioner further argues that the appropriate remedy is his immediate release. *Id.*

In Respondents' Response to Motion to Amend Petition and Reply to Motion to Amend Petition (Dkt. No. 15) ("Respondents' Response to Petitioner's Motion to Amend"), Respondents contend that the Petition should be denied for failing to state a viable claim because Petitioner has already received two bond hearings. (Dkt. No. 15 at 2.) Respondents further contend that Petitioner received a legally adequate bond hearing and that, to the extent he seeks to challenge the adequacy of such hearings, he should be required to exhaust his administrative remedies. (Dkt. No. 15 at 3-6.)

**A. The Court Has Subject Matter Jurisdiction**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner has an established liberty interest in maintaining his freedom from immigration detention.**

In the District Court's Order Granting TRO, the Court affirmed Respondents' concession that Petitioner "appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-

SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)." (Dkt. No. 7 at 1.) The Court further found that "Petitioner is likely to succeed on the merits of his claims that his ongoing detention under 8 U.S.C. § 1225(b)(2) is unlawful because 8 U.S.C. §1226(a) governs his detention" and granted Petitioner's Motion for TRO on this basis. (Dkt. No. 7 at 2.)

This Court agrees with the findings of the District Court and finds that Petitioner has an established liberty interest in maintaining his freedom from immigration detention. Under 8 U.S.C. § 1225(b)(2)(A), mandatory detention without the possibility of bond applies only to aliens seeking admission at the border or a port of entry, not to aliens present without admission who are apprehended in the interior of the United States. *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). Such interior aliens remain subject instead to the discretionary detention scheme of 8 U.S.C. § 1226(a), which entitles them to an individualized bond hearing, because the statutory definition of "admission" as lawful "entry . . . into the United States," 8 U.S.C. § 1101(a)(13)(A), combined with § 1225(b)(2)(A)'s requirement that the alien be "seeking" that entry, confines the mandatory-detention provision to aliens actively attempting to cross into the country. *Rodriguez Vazquez*, 2026 WL 2196424, at *10–12. This reading applies even though such aliens are "deemed" "applicant[s] for admission" under the separate deeming provision of § 1225(a)(1), since that phrase is a term of art that does not place them in a perpetual state of "seeking" entry. *Id.* at 11, 14–15 (*citing Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc)).

Accordingly, as the current record indicates that Petitioner has been residing in and was detained in the interior of the United States, the Court concludes that the Fifth Amendment Due Process Clause protects Petitioner's substantial liberty interest in maintaining his freedom from confinement.

**C. Respondents Provided Petitioner an Individualized Bond**

**Hearing in Compliance with the District Court's TRO Order.**

The record before the Court indicates that Respondents provided Petitioner with a custody redetermination hearing on April 6, 2026 ("Petitioner's April 6, 2026, Bond Hearing"), in compliance with the District Court's Order Granting TRO. (Dkt. No. 9 at 2.)

In making a bond determination, the IJ may consider:

> (1)whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020).

In his Order denying Petitioner's bond, the IJ purported to consider: Petitioner's illegal re-entries after he exited the country, his ineligibility for adjustment of status based on such re-entries, whether Petitioner's daughter's medical condition would entitle him to cancellation of removal for certain non-permanent residents, Petitioner's unauthorized employment history and potential use of a false social security number, Petitioner's untimely asylum application, and the merits of Petitioner's asylum application. (Dkt. No. 9-1.)

The IJ further reasoned that "The Court weighs the likelihood of success on relief applications more heavily than the respondent's other factors here, because the ultimate determination of whether the respondent will be able to remain legally in the United States, is one of the very purposes of removal proceedings." *Id.* The IJ ultimately found Petitioner a flight risk such that no bond is appropriate. *Id.* at 3.

Federal courts retain jurisdiction to consider constitutional claims or "mixed questions" involving the application of law to facts. The Ninth Circuit has found that the immigration courts' determination that a noncitizen presents a danger is such a "mixed question" amenable to federal court review. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Under *Martinez*, this Court reviews the IJ's dangerousness and flight risk finding for "abuse of discretion." 124 F.4th at 784. Under that deferential standard, the reviewing court determines whether the IJ " 'applied the correct legal standard' " and may not " 'reweigh evidence.' " *Id.* at 785 (*quoting Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). An IJ " 'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,' " *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (*quoting Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)), or " 'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.' " *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (*quoting Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).

The IJ did not abuse his discretion in denying Petitioner's bond. First, the IJ properly considered Petitioner's history of immigration violations and manner of entry under *Guerra* factors (7) and (9). Second, the IJ appropriately evaluated Petitioner's family ties under *Guerra* factor (3), which permits the IJ to assess the existence of family ties and "whether they may entitle the alien to reside permanently in the United States in the future." The IJ considered that

Petitioner has a daughter in the United States and the IJ properly considered whether Petitioner's illegal re-entries statutorily bar him from adjusting his status and whether his daughter's medical condition would qualify him for cancellation of removal. By reviewing the merits of this potential relief, the IJ's reasoning remains within *Guerra's* mandate to determine whether Petitioner's family ties offer a viable path to future lawful permanent residence. Third, the IJ appropriately weighed Petitioner's employment history and potential use of a false Social Security number under *Guerra* factors (4) and (6).

As the record demonstrates, the IJ's evaluation was grounded in a personalized assessment of the permissible factors for consideration under *In re Guerra* and *Matter of R-A-V-P-*. Thus, the Court finds that Petitioner's April 6, 2026, Bond Hearing was sufficiently individualized and comports with the protections of Fifth Amendment Due Process.

**IV. CONCLUSION**

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered DENYING the Petition; (2) Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: October 7, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE